UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COMPLAINT FORM

----------------------------------------X
Alfreda Adams,

                 Plaintiff,      Case No. 3:12-CV-340SRU

    -against-                  JURY TRIAL DEMANDED

Anthony Simone, Detective;
Ralph Puglia, Detective;
Damico; Police Officer;
Scott, Police Officer;
Morse, Police Officer;
A Number of John Doe, Police Officers;
West Haven Police Department;
City of West Haven,

                 Defendants.
----------------------------------------X

## COMPLAINT

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§1983, 1988, and in violation of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common Law of the State of Connecticut against Anthony Simone, Puglia, Damico, Scott, Morse, a number of John Doe Officers, the West Haven Police Department, and the City of West Haven, in their individual and official capacity. This Court has jurisdiction based upon 28 U.S.C. §§1331, and 1343, and venue based upon 18 U.S.C. §1965(a).

2. It is alleged that defendants Simone, Puglia, Damico, and Scott entered plaintiff's home without consent unlawfully intruding, invading her privacy and made an unreasonable search of her home, violating her rights under the Fourth and Fourteenth

1

Amendments to the United States Constitution.

3. It is alleged that defendants Simone, Puglia, Damico, Scott, Morse, and a nuber of John Doe Police Officers entered plaintiff's home without consent unlawfully intruding, invading her privacy and made an unreasonable search of her home, and held her against her will from approximately 4:35 p.m., until 9:40 p.m., in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

4. It is alleged that defendants Simone, Puglia, Damico, Scott, Morse, and a number of John Doe Police Officers entered plaintiff's home without consent unlawfully intruding, invading her privacy and made an unreasonable search of her home, and detained her against her will from approximately 4:35 p.m., until 9:40 p.m., in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

5. It is alleged that defendants Simone, Morse, and the West Haven Police Department instituted a false arrest in retaliation for her prior action against officers in the West Haven Police Department in violation of her First and Fourteenth Amendments to the United States Constitutions.

6. It is alleged that defendants Simone, Damico, Scott, and a number of John Doe Officers subjected plaintiff to cruel and unusual punishment by forcing plaintiff sit in a hard kitchen chair without being able to use the bathroom, or eat anything in violation of her rights under the Eight, and Fourteenth Amendment to the United States Constition.

## PARTIES

7. Plaintiff, Alfreda Adams, is a citizen of the State of Connecticut, over the age of eighteen years. Plaintiff lives at 90 Rockdale Rd. West Haven, Connecticut 06516.

8. Defendants Simone, Puglia, Damico, Scott, Morse, and a number of John Doe Officers were at all times relevant to his complaint duly appointed and acting officers of the Police Department at 200 Sawmill R., West Haven, Connecticut 06516, acting under the color of law, to wit, under the color of the statures, ordinances, regulations. policies, customs, and usage of the State of Connecticut and/or City of West Haven and the United States Constitution.

9. The Police Department and the City of West Haven, Connecticut, is a municipal corporation and the public employer of the said officers.

## FACTS

10. On or about September 2, 2011, at approximately 4:15 p.m., I, Alfreda Adams, (hereafter, Plaintiff), was leaving her house for an appointment. As Plaintiff approached her Van, she saw a male, (hereafter, Melendez), walking in her direction from the corner of Chauncey.

11. Plaintiff realize that she had left her paperwork inside her house, and went back inside to retrieve it. Once plaintiff came back out her door, she notice that Melendez was standing in her front yard. Plaintiff asked Melendex who was he looking for. Because Melendez did not respond, plaintiff started walking towards Melendez and repeated her question to which Melendez did not respond again.

12. As plaintiff walk towards Melemdez, defendant Puglia arrived in front of plaintiff's house and jumped out of his patrol car and yelled, did anybody get shoot. Plaintiff was surprised and shock at the question and said no. Defendant Puglia then ask Melendez was he shoot and he to responded no.

13. Defendant Puglia then approached Melendez and again ask him was he shoot and for a second time Melendez stated that he was not shoot. Defendant Puglia then began to search Melendez and pulled up his shirt and saw that Melendez had what appeared to be a gunshoot wound.

14. Defendant Puglia went back to his patrol car and radioed backup and medical help. Defendant Puglia then told plaintiff to go back inside her house. Defendants Simone, Damico, Scott, Morse, and a number of John Doe Officers arrived in front of plaintiff house.

15. After defendants Puglia and Simone talked, defendant Simone told a number of John Doe Officers to secure plaintiff's house by placing Yellow Police Tape around it and stated to plaintiff that no-one is allowed in or out of her house.

16. Defendants Simone and Damico approached plaintiff while she was standing on her porch and asked her was her son Hakeem in her house. Plaintiff was very surprised at their question and said that her son Hakeem was not in her house.

17. Defendants Simone and Damico looked into plaintiff's door and saw a male who was disable coming up the stairs to take his daily shower. Defendant Damico yelled at plaintiff and said, I thought you said that no-one was in your house.

Plaintiff responded and told defendant Damico that he had only ask her was her son Hakeem in the house. Damico became very upset and yelled for plaintiff and the male, (hereafter, Wansley), to come out of her house and stand on her porch.

18. Once plaintiff and Wansley was standing on her porch, defendant Damico and two John Doe officers went into plaintiff's house and started searching. Plaintiff asked both defendant Simone and Damico did they have a warrent to search her house. Defendant Damico told plaintiff to shut up and stay outside.

19. Plaintiff again asked defendant did he have a search warrent to enter and search her house. Defendant Damico stated that they did not need a warrent to search her house, and continued to search plaintiff's house from room to room.

20. After the search was completed, defendant Damico came out of plaintiff's house and told plaintiff and Wansley and granddaugther, (hereafter, McNeil), who had just return from her friends house, to go with defendant Scott and a John Doe officer into her kicthen and sit at her table and don't move.

21. Once plaintiff, Wansley and McNeil was seated at the kitchen table, defendant Simone post defendant Scott to guard them and posted a John Doe officer to guard them at plaintiff's back door. When plaintiff asked defendant Simone why was they being held in her kitchen and couldn't move, defendant Simone responded that they were waiting for a search warrant and until then nobody could move.

22. When plaintiff stated that defendant Damico and the

5

Other John Doe officers had already searched her entire house and was told that a search warrant was not needed, Defendant Simone told plaintiff to stay there and don't move from the kitchen table.

23. Approximately one hour had past and plaintiff ask defendant Scott what was taking so long with the warrant because they all had to use the bathroom and McNeil was a child and needed something to eat. Defendant Scott stated that it was the weekend and it will take a few hours.

24. Plaintiff then explain that she didn't want McNeil, Wansley and herself to be held hostage in her own kitchen for hours on end. Defendant Scott responded and said that how ever long it would take for the warrant they all would have to sit at the kitchen table.

25. Approximately three hours had past and Wansley, McNeil and plaintiff had to use the bathroom very badly and ask defendant Scott could they be allowed to use the bathroom. The request was denied by defendant Scott who stated, "no, you all will sit there until the warrant comes." Even though plaintiff was in pain, she plead to allow McNeil, who was a child and Wansley who was disable to at least be allowed to use the bathroom. The request was denied by defendant Scott.

26. Plaintiff ask defendant Scott could they at least sit in her living room instead of the kitchen where the chairs were more comfortable because Wansley was a disable and McNeil was a child and her back had began to hurt as a result of sitting at the kitchen table for so long.

6.

27. Defendant Scott denied plaintiff's request to be seated in her living room because it was convenient for the John Doe officers posted at plaintiff's front door and back door to keep each other company by talking to each other.

28. Had plaintiff been allowed to sit in her living room, it would have been impossible for the two John Doe officers to talk to each other while passing time waiting for the warrant.

29. At approximately 8:45 p.m., defendant Simone arrived with a warrant and he and a number of John Doe officer's began to search plaintiff house again. The search was completed at approximately 9:40 p.m.

30. Plaintiff, Wansley and McNeil was made to sit at her kitchen table from approximately 4:35 p.m., until 9:40 p.m., without being allow to use the bathroom even though they experienced stomach pain by not being allow to go.

31. On or about September 8, 2011, plaintiff received a phone call from her son Hakeem who inform her that he had been arrested and was at the West Haven Police stationhouse and needed a shirt because his shirt that he was wearing was wet.

32. When plaintiff arrived at the West haven Police station she spoke with defendant Simone who inform her that her son was charge with the allege shooting. Plaintiff inform defendant Simone that his actions was wrong for entering her house without a warrant and holding them in her kitchen for so many hours and inform defendant Simone that she had a Civil Action pending in the Federal Court concerning the actions of officer's from the West Haven Police Department.

33. Defendant Simone told plaintiff that the West Haven Police Department knew all about her Civil Action.

34. On or about September 19, 2011, plaintiff received a call from defendant Simone who inform her that she had to turn herself in because there was a warrant out for her arrest. Plaintiff inquire into the nature of the warrant and was told by defendant Simone that it was because she had something to do with the shooting of Melendez.

35. On or about September 20, 2011, plaintiff reported to the West Haven Police station and was arrested, fingerprinted and processed by defendant Morse. Plaintiff explain to defendant Morse that the arrest was nothing more then harassment and retaliation because of her prior Civil Action that she file against the police department.

36. Defendant Morse process plaintiff and filed charges against plaintiff to justify and/or cover up for defendants Simone, Puglia, Damico, Scott, and a number of John Doe police officers misconduct and illegal actions.

### COUNT I 42 U.S.C §1983 UNLAWFUL INTRUSION AND INVASION OF PRIVACY

37. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38. Plaintiff Alfreda Adams is damaged from the injuries for mental, emotional, conscious pain and suffering against defendants Simone, Damico, Scott, Morse, and a number of John Doe officers for violation of her Constitutional rights under the color of law.

### COUNT II 42 U.S.C. §1983
### UNLAWFUL SEARCH OF RESIDENT

39. Paragraphs 1 through 38 are incorporated herein by reference as though fully set forth.

40. Plaintiff Alfreda Adams is damaged from the injuries of mental, emotional, conscious pain and suffering against defendants Simone, Damico, Puglia, Scott, Morse, a number of John Doe officers for violation of her Constitutional rights under the color of law.

### COUNT III 42 U.S.C. §1983 UNLAWFUL
### DETENTION AND ARREST

41. Paragraphs 1 through 40 are incorporated herein by reference as though fully set forth.

42. Plaintiff Alfreda Adams is damaged from the injuries of mental, emotional, pain and suffering, conscious pain and suffering against defendants Simone, Damico, Puglia, Scott, Morse, a number of John Doe officers for violation of her Constitutional rights under the color of law.

### COUNT IV 42 U.S.C. §1983 AGAINST
### THE WEST HAVEN POLICE DEPARTMENT
### AND THE CITY OF WEST HAVEN

43. Paragraphs 1 through 42 are incorporated herein by reference as though fully set forth.

44. Prior to September 2, 2011, the West Haven Police Department and the City of West Haven developed a series of patterns, policies and/or customs exhibiting deliberate indifference to the Constitutional rights of persons, in West Haven, which caused the violation of Alfreda Adams Constitutional rights by allowing defendant Morse to cover-up the unlawful actions of defendants Simone, Damico, Puglia, Scott, and a

number of John Doe officers by filing false arrest.

45. It was the patterns, policies and/or customs of the West Haven Police Department and City of West Haven to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by defendants Simone, Damico, Puglia, Scott, Morse, and a number of John Doe officer, by the West Haven Police Department and the City of West Haven.

46. It was the patterns, policies and/or customs of the West Haven Police Department and City of West Haven to inadequately and improperly supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of the police officers. The Police Department and the City of West Haven did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

47. As a result of the above described patterns, policies and/or customs, of the police officers of the City of West Haven, including the defendant officers, believed that their action would not be properly monitored by Supervisory Officer and that misconduct would not be investigated or sanctioned, but would be tolerated.

48. The above described patterns, policies and customs demonstrated deliberate indifference of the part of policymakers of the City of West Haven to violate the constitutional rights of persons within the City of West Haven and were the cause of the violations of Plaintiff's rights alleged herein.

WHEREFORE, the plaintiff requests that this Court:

(a). Award compensatory damage in the amount of $20,000,000.00 (twenty million), against the defendants, jointly and severally;

(b). Award punitive damages in the amount of $20,000,000.00 (twenty million), against the defendants, jointly and serverally;

(c). Award intentional damages in the amount of $20,000,000.00 (twenty million), against the defendants, jointly and severally;

(d). Award injunctive relief for future retaliation and harassment by the defendants;

(e). Award such other and further relief as this Court may deem appropriate.

**JURY TRIAL DEMANDED**

_____
Original Signature of Attorney

_____
Plaintiff's Original Signature

_____
Print Name

Alfreda Adams
90 Rockdale Rd.
West Haven, CT 06516
203-931-0608

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, the she has read the above complaint and that the information contained in the complaint is true and correct. 28 .S.C. §1748; 18 U.S.C. §1621.

Execute at: 90 Rockdale Rd. West Haven, CT 06516 on:

3-5-12
Date

Alfreda Adams